[Cite as *McDermott v. Ohio State Univ.*, 2022-Ohio-4780.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Morgan McDermott, | : | |
| Plaintiff-Appellee, | : | No. 22AP-76 |
| | | (Ct. of Cl. No. 2020-00286JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| The Ohio State University, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 29, 2022

**On brief:** *Williams & Klang, LLC, Merriman Legando*, and *Drew Legando* for appellee. **Argued:** *Drew Legando*.

**On brief:** *Squire Patton Boggs, John R. Gall, Traci L. Martinez, E. Joseph D' Andrea, Elizabeth P. Helpling*, and *Roger M. Gold* for appellant. **Argued:** *Traci L. Martinez*.

APPEAL from the Court of Claims of Ohio

JAMISON, J.

{¶ 1} Defendant-appellant, The Ohio State University ("OSU"), appeals from a judgment of the Court of Claims of Ohio, in favor of plaintiff-appellee, Morgan McDermott ("McDermott"), on the issue of class certification. For the reasons that follow, we affirm in part and reverse in part.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In May of 2020, McDermott was enrolled as a full-time, third year student in OSU's dental program. McDermott paid a mandatory student union facility fee OSU charged to all full-time students living on campus. The student union fee for the spring

semester of the 2020 academic year was $74.40. On or about March 2020, OSU closed the student union to students and the general public due to the COVID-19 pandemic.

{¶ 3}  As a student in OSU's dental program, McDermott also paid a yearly clinical education support fee of $1,993. According to the complaint, "[t]his fee is imposed on DDS candidates to provide for [their] live clinical programs which are required for them, and essential to them, to obtain their degrees and to obtain a dental license in Ohio and other states. In order to graduate DDS candidates are expected to be in a DDS clinic Monday through Friday unless the student has an excused absence." (May 5, 2020 Compl. at 3-4.) There is no dispute that on March 16, 2020, the dental clinic was closed to students due to the COVID-19 pandemic. OSU did not refund any portion of the dental clinic support fee.

{¶ 4}  Under theories of implied contract and unjust enrichment, McDermott's complaint against OSU seeks recovery of $74.40, representing the amount of the student union fee paid for the spring and summer semesters in the 2020 academic year, and another $1,636, representing a prorated portion of the clinic education support fee paid for the spring and summer semesters. The complaint also seeks certification of a class of students who paid the yearly student union fee, but were totally denied access to the student union in the spring semester ("Student Union Facility Fee Class"), and a subclass of students who paid the dental clinical education support fee, but were denied full access to the dental clinic in the spring and summer semesters ("Clinical Education Support Fee Subclass").

{¶ 5}  On May 14, 2021, McDermott filed a motion for class certification, pursuant to Civ.R. 23. The court of claims scheduled the motion for non-oral hearing on November 19, 2021.

{¶ 6}  On November 16, 2021, OSU filed a motion for summary judgment on the issue of liability. In support of the motion, OSU submitted McDermott's deposition testimony, along with affidavits of Dr. Darryl Hamamoto, Associate Dean for Academic Affairs and Associate Professor at OSU's College of Dentistry, and others. In her deposition, McDermott provided details regarding the student union fee, the clinical education support fee and OSU's dental program. A non-oral hearing on the motion for summary judgment was scheduled for December 22, 2021.

{¶ 7} The court of claims did not proceed to a ruling on the motion for summary judgment. Instead the court of claims elected to determine class certification. The decision of the court of claims to determine class certification before ruling on OSU's motion for summary judgment is not assigned as error in this appeal.

{¶ 8} On December 27, 2021, the court of claims issued both a decision and judgment entry granting McDermott's motion for class certification. The court of claims certified both the class and subclass as follows: 1) Class: All students enrolled in graduate or undergraduate academic courses at the Columbus, Ohio campus of The Ohio State University (OSU) for the Spring 2020 semester and who paid OSU's Student Union Facility Fee for that semester; 2) Subclass: All students enrolled in OSU's College of Dentistry DDS courses for the Spring 2020 and/or Summer 2020 semesters and who paid OSU's clinical education support fee for one or both semesters.

{¶ 9} OSU timely appealed to this court from the December 27, 2021 decision on class certification.

## II. ASSIGNMENTS OF ERROR

{¶ 10} Appellant assigns the following as trial court error:

[1.] In its Decision of December 27, 2021, the trial court erred and abused its discretion in certifying the Ohio Union Class and the Clinical Educational Support Fee Sub-class because it failed to conduct the "rigorous analysis" required by Civ.R. 23, in determining whether Plaintiff had satisfied the prerequisites for class certification.

[2.] In its Decision of December 27, 2021, the trial court erred and abused its discretion be certifying the Class and Sub-class when individual issues of fact predominated as to the existence of an implied contract, of a breach of that contract, and of the injury and damages and a class action was not superior for resolving the controversy.

[3.] In its Decision of December 27, 2021, the trial court erred and abused its discretion when it found that Plaintiff's claims satisfied the commonality requirement of Civ.R. 23.

[4.] In its Decision of December 27, 2021, the trial court erred and abused its discretion when it certified the Class and Sub-class, which were overbroad and ambiguous as stated.

[5.] In its Decision of December 27, 2021, the trial court erred and abused its discretion when it held that Plaintiff's claims were typical of the Class and Sub-class, that Plaintiff herself was a member of the classes she sought to represent, and that Plaintiff was an adequate representative.

[6.] In its Decision of December 27, 2021, the trial court erred and abused its discretion when it certified the Class and Sub-class in a suit over which the court lacked jurisdiction because The Ohio State University is an agency or instrumentality of the State, and its decision to temporarily close or restrict access to its facilities in the face of the COVID-19 pandemic was a basic policy decision characterized by a high degree of official judgment and discretion.

## III. STANDARD OF REVIEW

{¶ 11} "A trial court has broad discretion in deciding whether a class action may be maintained." *Egbert v. Shamrock Towing, Inc.*, 10th Dist. No. 20AP-266, 2022-Ohio-474, ¶ 14, citing *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200 (1987), syllabus. However, "a trial court's discretion in deciding whether to certify a class action is not without limits and must be exercised within the framework of Civ.R. 23." *Egbert* at ¶ 15, citing *Hamilton v. Ohio Sav. Bank,* 82 Ohio St.3d 67, 70 (1998). Therefore, a trial court's decision to grant certification of a class action will not be disturbed absent an abuse of that discretion. *In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, ¶ 5. A trial court abuses its discretion if its ruling is "unreasonable, arbitrary or unconscionable." *Cross v University of Toledo*, 10th Dist. No. 21AP-279, 2022-Ohio-3825, ¶ 20, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## IV. LEGAL ANALYSIS

### A. Assignments of Error

{¶ 12} OSU's first three assignments of error challenge the trial court's determination that McDermott satisfied the commonality and predominance requirements for class certification. Accordingly, we shall consider the assignments of error jointly.

{¶ 13} Civ.R. 23(A) provides that:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class,

(4) the representative parties will fairly and adequately protect the interests of the class.[1]

{¶ 14} McDermott seeks certification of a class pursuant to Civ.R. 23(B), which provides that a class action may be maintained when all requirements of Civ.R. 23(A) are satisfied, and if:

> (*B)(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.* The matters pertinent to these findings include:
>
> (a) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (b) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (d) the likely difficulties in managing a class action.

(Emphasis added.)

{¶ 15} In *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, the Supreme Court of Ohio explained that Civ.R. 23 provides seven requirements for maintaining a class action:

> (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and 7) one of the three Civ.R. 23(B) requirements must be met.

*Id.* at ¶ 12.

---

[1] OSU concedes the numerosity requirement is satisfied as to both the class and subclass as certified.

{¶ 16} Class certification under Civ.R. 23(B)(3) requires the trial court to make the following additional findings:

> "[T]he questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and, second, "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This inquiry requires a court to balance questions common among class members with any dissimilarities between them, and if the court is satisfied that common questions predominate, it then should "consider whether any alternative methods exist for resolving the controversy and whether the class action method is in fact superior."

*Cullen* at ¶ 29.

{¶ 17} The burden on the party seeking class certification under the analogous provisions of the Federal Civil Rules was described by the United States Supreme Court in *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013):

> The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." To come within the exception, a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Rule 23. The Rule "does not set forth a mere pleading standard." Rather, a party must not only "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact," typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b). * * * Rule 23(b)(3), * * * requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members."

(Emphasis sic.) (Citations omitted.) *Id*.

{¶ 18} In *Cullen*, the Supreme Court of Ohio has also made clear, "[a] party seeking certification pursuant to Civ.R. 23 bears the burden of demonstrating by a preponderance of the evidence that the proposed class meets each of the requirements set forth in the rule." *Cullen*, paragraph three of the syllabus.

{¶ 19} The Supreme Court also described the nature and extent of the analysis that must be undertaken by the trial court in certifying a class:

> [A] trial court must conduct a rigorous analysis when determining whether to certify a class pursuant to Civ.R. 23 and may grant certification only after finding that all of the requirements of the rule are satisfied; the analysis requires the court to resolve factual disputes relative to each requirement and to find, based upon those determinations, other relevant facts, and the applicable legal standard, that the requirement is met.
>
> Class action certification does *not* go to the merits of the action. (Emphasis sic.) However, deciding whether a claimant meets the burden for class certification pursuant to Civ.R. 23 requires the court to consider what will have to be proved at trial and whether those matters can be presented by common proof. Thus, * * * *in resolving a factual dispute when a requirement of Civ.R. 23 for class certification and a merit issue overlap, a trial court is permitted to examine the underlying merits of the claim as part of its rigorous analysis, but only to the extent necessary to determine whether the requirement of the rule is satisfied.*

(Emphasis added.)  (Internal citations and quotations omitted.)  *Id.* at ¶ 16-17.

### 1. Student Union Facility Fee Class

### a) OSU's First, Second and Third Assignments of Error

{¶ 20} Appellant's primary argument in support of the first three assignments of error is that the court of claims abused its discretion when it certified the class without undertaking the rigorous analysis necessary to determine whether there are questions of law or fact common to the class members, and, if so, whether the common questions of law or fact predominate over any questions affecting only individual members.

{¶ 21} McDermott's complaint alleges that OSU breach an implied contract between the parties by failing to refund a pro rata portion of the student union fee after closing the student union for part of the spring semester.  In the alternative, McDermott seeks to recover a pro rata portion of the fee from OSU under the equitable theory of unjust enrichment.

{¶ 22} Under Ohio law, "an implied contract may be inferred by the acts of the parties and, although mutuality of will or contractual intent must be present, '* * * [a]

contract implied in fact may be proved by showing that the circumstances surrounding the parties' transactions make it reasonably certain that an agreement was intended. * * *' " *Miller v. BancOhio Natl. Bank*, 10th Dist. No. 90AP-380, *28-29 (Apr. 23, 1991), quoting *Lucas v. Costantini*, 13 Ohio App.3d 367, 369 (12th Dist.1983), citing *The Columbus, Hocking Valley & Toledo Ry. Co. v. Gaffney*, 65 Ohio St. 104 (1901). Unjust enrichment is an alternative theory of recovery, which operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another. *Cantlin v. Smythe Cramer Co.*, 8th Dist. No. 106697, 2018-Ohio-4607, ¶ 41. The elements of unjust enrichment are: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

{¶ 23} In her deposition testimony, McDermott admitted there was no specific written or oral agreement between the students and OSU concerning the student union, but the facility was featured prominently in OSU's promotional materials and website. McDermott described the OSU student union in her complaint as follows:

> All OSU students, both graduate and undergraduate at OSU Columbus campus, are required by OSU to pay to the Student Union Facility Fee, which, for the Spring 2020 semester, was $74.40. The Student Union Facility Fee was assessed to provide for the operation of the Ohio Student Union which is known as the Ohio Union. The Ohio Union is a 320,000 square foot building containing among other spaces, the Archie Griffin Ballroom, named for the university's two-time Heisman Trophy winner, which is a place for concerts, meetings and events. The Ohio Union also includes several dining options for students. In addition, student organizations, of which OSU has about 950, have an area with offices for 80 and meeting spaces for other groups. The Ohio Union is a central part of student life on the Columbus Campus.

(Compl. at 3.)

{¶ 24} McDermott testified that her Buck ID and dental clinic badge permitted her access to portions of the student union that are not accessible to others, but that the student union is otherwise open to all OSU students and the general public. McDermott estimated

that she had visited the student union for a variety of reasons on 15 occasions prior to the pandemic.

{¶ 25} In certifying the class and subclass, the court of claims made the following determination:

> For each class or subclass member, the material circumstances underlying the alleged implied contract will be the same. The university advertised the existence of the student union building and dental clinic and charged each member of the class and the subclass the student union fee and the clinical Education Support Fee, respectively, and each member of the class and the subclass paid the student union fee and the clinical Education Support Fee, respectively. It does not matter what each individual student was thinking when they paid either fee. The Court thus concludes that common issues of law or fact predominate.

(Dec. 27, 2021 Decision at 12-13.)

{¶ 26} The Supreme Court has held that "[f]or common questions of law or fact to predominate, it is not sufficient that such questions merely exist; rather, they must represent a significant aspect of the case. Furthermore, they must be capable of resolution for all members in a single adjudication." *Marks* at 204. With regard to the commonality requirement in Civ.R. 23(B), the United States Supreme Court has stated the "language is easy to misread, since '[a]ny competently crafted class complaint literally raises common 'questions.' * * * What matters to class certification . . . is not the raising of common 'questions' - - even in droves - - but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.' " (Emphasis sic.) (Internal citations and quotations omitted.) *Wal-Mart v. Dukes*, 564 U.S. 338, 349-50 (2011).

{¶ 27} Commonality further "requires the plaintiff to demonstrate that the class members have suffered the same injury." (Internal quotation marks omitted.) *Id.* at 350. The common injury "must be of such a nature that it is capable of classwide resolution - - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Where common issues predominate, the class members "will prevail or fail in unison." *Amgen Inc. v. Connecticut. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013).

{¶ 28} OSU's argument on both the merits of McDermott's implied contract and unjust enrichment claims and in opposition to class certification is that the student union facility fee is a debt service fee rather than an access fee. OSU maintains that the student union fee is used by OSU exclusively to pay down the debt incurred to construct and maintain the facility. OSU claims that even though only full-time students living on campus pay the student union facility fee, payment does not guarantee access. OSU further contends that because payment of the student union fee was earmarked for debt service and not to keep the facility open, and because OSU used the payment to pay down debt, it was not unjust for OSU to keep the full payment even though it closed the facility. McDermott counters that a full-time on campus student pays the student union fee in return for OSU's promise to keep the student union open whether that student intends to visit the facility or not. She maintains that how OSU spends the fee income is irrelevant.

{¶ 29} The court of claims expressed doubt as to the merits of OSU's debt service argument during the hearing on class certification. More particularly, the court of claims noted that the Buckeye Guide to Academic Policies, which describes the student union fee, does not mention the term "debt service." (Nov. 19, 2021 Tr. at 22.) The court of claims suggested, without deciding the matter, that the parties understood the fee was paid by students in return for OSU's promise to keep the student union open to students and the public. Nevertheless, for purposes of class certification, the question whether full-time on campus students pay the student union facility fee in order the have access to the student union or to service the debt attributable to construction is a threshold question of liability common to all class members. As there is no dispute OSU used the fee income for debt service, the answer to that common question will generate an answer common to all class members. Indeed, if the court of claims rules the surrounding facts and circumstances show that the parties understood the student union facility fee was paid merely to service the debt associated with constructing the facility, and not to guarantee access by students and the public, that ruling will dispose of the implied contract and unjust enrichment claims of all class members seeking a prorated refund. This common issue can be decided based on common evidence such as the Buckeye Guide to Academic Policies, OSU's promotional materials, McDermott's testimony, and the testimony of OSU's administrative staff.

{¶ 30} OSU's alternative argument is that even if the student union fee is deemed an access fee rather than a debt service fee, the class certified by the court of claims includes students who were undamaged by the closure. OSU posits that the only class members who were damaged by the closure are those who can prove they would have used the facility during the spring semester. OSU claims that hundreds or thousands of mini-trials will be required to determine the individual questions of damages.

{¶ 31} The court of claims failed to see the logic in OSU's claim that the student union facility fee, which is an up-front fixed fee, was understood by the parties as prepayment for actual use of the facility rather than a right of access by students and the public.[2] OSU has not cited any convincing evidence that the parties understood actual use of the student union by the payee student was either required or limited. Full-time students living on campus may not opt out of the student union fee if they promise not to use the facility and there is no evidence that additional charges apply to those students who frequently visit the facility. Consequently, OSU's alternative argument lacks evidentiary support.

{¶ 32} OSU nevertheless contends that many of the proposed class members cannot prove out-of-pocket loss because they received some type of student aide either in the form of loans, scholarships, or grants to cover the cost of the student union fee. OSU claims that these individual questions of damages predominate.

{¶ 33} A similar argument was rejected by this court in *Madyda v. Ohio Dept. of Pub. Safety*, 10th Dist. No. 20AP-217, 2021-Ohio-956. In *Madyda*, this court affirmed a court of claims decision to certify a class of motorists seeking a refund of a $1.50 fee that deputy registrars imposed "to compensate them for the costs of creating, printing, and laminating" identification cards. *Id*. at ¶ 2. Plaintiffs alleged that deputy registrars did not perform those services after July 2, 2018, but they continued to charge applicants the fee. One of the arguments in opposition to class certification was the assertion that the fee may have been paid by another on behalf of the applicant and, therefore, not all class members were injured. In rejecting this argument we noted:

> As the Court of Claims aptly stated, "[a]ll of the individuals
> who were issued a credential between July 2, 2018 and July 2,

---

[2] McDermott testified that OSU provided a pro rata refund of the student recreational fee without requiring the payee to demonstrate an intent to actually use the gym facilities on campus.

2019 were required to pay the lamination fee to receive their credential, and simply put, were potentially overcharged $1.50." (Decision at 4.) Thus, unlike the putative class members in [*Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430], in this case, all class members were in fact injured by the actions of ODPS. The ultimate source of the $1.50 Lamination Fee on the part of each individual is simply not the determinative factor as to whether all class members were injured in fact, and none of the cases cited by ODPS hold otherwise. Accordingly, the Court of Claims finding that the predominance requirement was satisfied is not an abuse of discretion.

*Id.* at ¶ 22.[3]

**{¶ 34}** Here, as was the case in *Madyda,* each class member was charged a student union fee for the spring semester, and all were potentially injured when the student union was closed. Whether a third-party paid the fee on behalf of a class member is simply not the determinative factor as to whether all class members were injured in fact.

**{¶ 35}** We acknowledge the Civ.R. 23 analysis conducted by the court of claims was concise. However, this is understandable inasmuch as the facts material to the claims of the class members are few, and the common legal and factual questions identified by the court of claims are significant to the resolution of those claims. As the Supreme Court noted in *Cullen*, the predominance requirement is not a function of the number of common questions, but the significance of those questions (and answers) to the resolution of the claims. *Cullen* at ¶ 30.

**{¶ 36}** The evidence also supports the finding of the court of claims that a class action is a superior method of efficiently processing thousands of small claims against a state university arising out of the same law and facts. In affirming the certification in *Madyda*, this court noted:

In considering the factors relevant to the court's inquiry on both the predominance and superiority requirements, it is important that the trial court keep in mind the essential purpose of class certification under Civ.R. 23(B)(3), which is to enable "numerous persons who have small claims that might not be worth litigating in individual actions to combine

---

[3] In *Felix*, the Supreme Court overturned the certification of a consumer class because "there [was] absolutely no showing that all of the consumers who purchased vehicles through a contract with the offensive arbitration provision were injured by it or suffered any damages." *Id.* at ¶ 37.

their resources and bring an action to vindicate their collective rights." Furthermore, a trial court must be mindful that "[q]uestions going to the merits of the action are not determined at the class certification stage."

(Internal quotations and citations omitted.) *Id*. at ¶ 18.

**{¶ 37}** Here, as was the case in *Madyda,* the relatively small dollar value of the individual claims might discourage claimant's from prosecuting an action against OSU in the court of claims. However, by combing their resources to bring a class action, many thousands of similarly situated students with the same small claim may economically and efficiently seek recovery. By the same token, OSU can avoid the cost in time and resources that would be required to defend hundreds or thousands of small claims. Accordingly, we disagree with OSU's contention that the court of claims failed to conduct a rigorous analysis of commonality, predominance, and superiority before certifying the student union fee class.[4]

**{¶ 38}** Based on the foregoing, we hold that the court of claims did not abuse its discretion when it found by a preponderance of the evidence that questions of law and fact common to all class members predominate over questions affecting individual members, if any. Appellant's first, second, and third assignments of error are overruled as they pertain to the student union fee class.

### b) OSU's Fourth and Fifth Assignments of Error

---

[4] This court has recently addressed the issue of class certification in a case against the University of Toledo ("UT") arising out of the COVID-19 pandemic. In *Cross*, the court of claims certified three separate classes of students: Tuition Class; Room and Board Class; and Fees Class. The Fees class is described as "[a]ll people who were charged for or paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester." *Id*. at ¶ 3.

The focus of the appeal was the scope of the analysis conducted by the court of claims on the requirements of commonality and predominance relative to the tuition class. In holding that the court of claims abused its discretion in certifying the tuition class, this court found that the court of claims did not address the relative arguments of the parties in any meaningful way or resolve factual matters relevant to the commonality and predominance requirements, such as the relative value of on-campus learning versus online learning. This court also noted that the court of claims failed to identify a single question of fact common to the members of the tuition class, and ignored evidence relevant to material factual issues raised by the specific claims asserted against UT.

Because the *Cross* decision focuses on the tuition class and does not identify the specific fees involved or contain any meaningful discussion of the fees class, the decision does not provide much guidance to this court in our review of the student union fee class.

{¶ 39} In OSU's fourth assignment of error, OSU contends that the court of claims failed to conduct a rigorous analysis in ruling that McDermott's claims were typical of the class members, and in the fifth assignment of error OSU argues the court of claims abused its discretion when it certified a student union fee class that is overbroad and ambiguous.

{¶ 40} In determining typicality, the trial court must analyze whether the class representatives' claims appear substantially similar to the claims of the other class members. *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 484 (2000). This inquiry "serves the purpose of protecting absent class members and promoting the economy of class action by ensuring that the interests of the named plaintiffs are substantially aligned with those of the class." *Id.*, citing 5 Moore Federal Practice, Paragraph 23.24[1] (3d Ed.1977).

{¶ 41} Here, the court of claims found that McDermott's claim seeking a pro rata refund of the student union fee under theories of implied contract and unjust enrichment was typical of the claims of the other members of the student union facility fee class. We perceive no abuse of discretion in this finding as the evidence shows that McDermott's claims are substantially similar, if not identical, both legally and factually to those of the other class members, and that McDermott is a suitable class representative. Additionally, we agree that the class as defined by the court of claims serves the purpose of protecting absent class members and promoting the economy of a class action because McDermott's interests are substantially, if not wholly, aligned with the other class members. Accordingly, OSU's fourth assignment of error is overruled as it pertains to the student union fee class.

{¶ 42} With regard to the class definition, "[t]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Hamilton* at 71-72, quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2d Ed.1986) 120-21, Section 1760. Accordingly, a class definition must be precise enough "to permit identification within a reasonable effort." *Hamilton* at 71-72, quoting *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91, 96 (1988). " 'Where a class is overbroad and could include a substantial number of people who have no claim under the theory advanced by the named plaintiff, the class is not sufficiently

definite.' " *Unifund CCR Partners v. Piaser*, 11th Dist. No. 2017-A-0003, 2018-Ohio-2575, ¶ 41, quoting *Miller v. Painters Supply & Equip. Co.*, 8th Dist. No. 95614, 2011-Ohio-3976, ¶ 24.

{¶ 43} The student union facility fee class as defined by the court of claims is limited to those full-time on campus students who were charged the student union facility fee, and only those who were charged the fee for the spring 2020 semester. Thus, the class definition precisely describes the claimants, the transaction involved, and the time frame. Though OSU asserts that it would be unduly burdensome for OSU to compile a list of students who fit the class description, it is likely a list of such individuals could be generated by a targeted search of OSU's electronic records. In our view, the class description is not overbroad or ambiguous.

{¶ 44} For the foregoing reasons, we overrule OSU's fifth assignment of error as it pertains to certification of the student union fee class.

### 2. Dental Clinic Fee Subclass

{¶ 45} We have determined that the court of claims did not abuse its discretion in certifying the student union facility fee class principally because the evidence shows that there are questions of fact and law common to all class members, the answers to those questions will determine the action for all class members, and that the common questions predominate over individual questions, if any. However, the evidence relative to the dental clinic support fee class warrants a different outcome as the evidence shows that the relationship between the parties regarding the dental clinic is much more complex.

{¶ 46} In his affidavit, Dr. Hamamoto averred that the Academic Handbook in effect in the spring and summer 2020 semesters, explains that students pay a dental clinical support fee each semester and that purpose of that fee is to pay "for repair, maintenance, and replacement of preclinical and clinical instruments and equipment, preclinical and clinical supplies, sterilization services, and other expenses related to the preclinical laboratory and predoctoral dental clinics." (Aff. of Dr. Hamamoto, Ex. 2, at ¶ 4.) (Nov. 16, 2021 Def.'s Mot. for Summ. Jgmt. at 4.) Dr. Hamamoto opined that "[n]o part of the description guarantees DDS students access to the Pre-Clinic or Clinic." (Aff. of Dr. Hamamoto, Ex. 2, at ¶ 4.)

{¶ 47} In her deposition testimony McDermott provided details regarding the OSU dental program and the dental clinic. McDermott testified that OSU's dental program ordinarily spans four academic years, but she graduated from the program on May 9, 2021, after five years. McDermott explained that she needed extra time to master some of the techniques required of first-year students in order to progress to the second year of the program. Thus, her need for a fifth year had nothing to do with the COVID-19 pandemic.

{¶ 48} According to McDermott, the first academic year of the program spans two semesters, but years two through four last four semesters. She stated that the first year curriculum is primarily didactic in nature with a limited laboratory component where students practice certain techniques on mannequins or on one another. This practice occurs in what is known as the preclinic setting. First and second year students do not treat patients in the dental clinic. McDermott testified that even though all dental students pay the dental clinical support fee, it is understood that only third and fourth year students use the dental clinic to treat patients.[5]

{¶ 49} McDermott stated that in order to advance to the third year, a second year dental student is required to pass a written exam, known as an NBDE ("National Board Dental Examination"). There are, however, no specified clinical requirements for second year dental students. In addition to didactic learning, third and fourth year students are required to demonstrate proficiency in the performance of certain dental procedures, known as competencies. McDermott testified that a third year dental student must successfully complete four supervised competencies on patients in the dental clinic, including a new patient examination, one type of cavity, one type of filling, and either an extraction or triage. The total number and type of competencies required of OSU dental students in both the third and fourth year is dictated by the Commission on Dental Accreditation ("CODA"). Third year students also begin treating patients in the dental clinic on a rotational basis. Once a third year student passes the didactic portion of the program and successfully performs four competencies in the clinic, the student can progress to the fourth year. There is no NBDE exam for third year dental students. According to McDermott, fourth year students must treat patients in the clinic on a

---

[5] McDermott mentioned that OSU conducts a friends and family day where first and second year students use the dental clinic to perform certain procedures on their invited guests.

rotational basis, complete an additional four competencies, and pass another NBDE in order to graduate from the program and qualify for licensure.

**{¶ 50}** McDermott recalled that the dental clinic closed due to the COVID-19 pandemic on March 16, 2020, during spring break, when she was a third year student. At that point in the academic year, McDermott had already completed all, or nearly all, competencies required of a third year student and she had gained all clinical experience she needed to progress to the fourth year of the dental program. She estimated that most of the fourth year students in the dental program had completed the required competencies prior to the closure of the dental clinic. She acknowledged that some may not have.

**{¶ 51}** McDermott testified OSU extended spring break one week due to the pandemic. During that period of time and thereafter, the clinic was staffed by OSU's professional dental staff and remained open to the public for treatment of dental emergencies. Thus, the dental clinic was never completely closed to the public. McDermott acknowledged that during the period of time the dental clinic was closed to students, OSU installed plexiglass shields between the stations and made other safety related upgrades in order to stay open during the pandemic. The dental clinic was subsequently reopened to fourth year students on May 3, 2020, to accommodate students who were short of clinical experience needed to graduate. The clinic otherwise remained closed to students throughout the spring and summer semester in compliance with an Executive Order issued by the Governor. McDermott estimated that by May 3, 2020, many fourth year dental students had completed either the original or adjusted clinical requirements.[6]

**{¶ 52}** McDermott testified that OSU's dental program was in the midst of a CODA re-accreditation process when the pandemic hit. She also testified that, due to the pandemic, CODA reduced the required number of competencies needed for third year students to progress to the fourth year and for fourth year students to graduate and become licensed. McDermott estimated that the adjusted CODA requirements took effect in March of 2021. She recalled that OSU added a summer semester at no charge for any fourth year student who had not satisfied clinical requirements prior to the end of the 2021 spring term. According to McDermott, when she and her classmates learned they had already met the

---

[6] As of May 3, 2020, when spring 2020 commencement took place, 79 of the 108 fourth year students. had completed the original or modified minimum clinical experiences and demonstrated the requisite competency needed to graduate. (Aff. of Dr. Hamamoto at ¶ 24.)

adjusted CODA requirements, many withdrew from the summer term. McDermott could not recall a single dental student who was unable to meet all clinical requirements necessary for graduation and licensing due to the closure of the dental clinic in 2020. McDermott graduated from OSU's dental program on May 9, 2021 and is now working as a licensed dentist.

{¶ 53} When McDermott was asked to evaluate her particular clinical experience following the pandemic, she testified as follows:

> Q. Do you feel as though you received the necessary hands-on experience to hold yourself out as a competent dentist?
>
> A. I do believe I'm a competent dentist, however, since we missed that time in clinic, normally during that time, most students finish their requirements and all their competencies with a little bit of extra time prior to graduation. For most of us, my class, it was like a race until the end, you know, really last minute getting things. That's why we were sharing procedures and things like that. Normally you can do maybe a couple extra procedures and do something really cool you've always wanted to do, maybe like do an extra implant or like do a big surgical case. Or like, for example, I really like pediatrics, it's interesting to me, so I was in a pediatric elective. It's just an extra course you can take if you want. Well, it was canceled. Nobody could take it. I was originally enrolled in it. And there's clinical experience that you can get and it's just extra, but I couldn't do it because of COVID. It was like going to - - it was supposed to be during that time frame. And then with all of the restrictions that the clinic was now putting on certain things, they just like nixed a lot of the extra things you normally could have done that on a regular year, anybody would have had the ability to access. And we didn't get that.

(June 14, 2021 Pl.'s Dep. Tr. at 185-86.)

{¶ 54} The Supreme Court has held that "[p]laintiffs in class-action suits must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant's actions." *Felix* at ¶ 33. In ruling on the motion for class certification, the court of claims did not mention McDermott's deposition testimony even though OSU's trial counsel referred to McDermott's testimony on several occasions during the oral hearing on class certification. This evidence shows that, unlike the circumstances surrounding payment of the student union fee, students in the dental program are required to use the dental clinic in order to satisfy the clinical component of the dental program.

Every dental student, particularly those in the third and fourth year, must have access to the dental clinic in order to graduate from the program. McDermott's testimony therefore suggests that dental students pay the dental clinic support fee in return for a certain degree of access to the dental clinic, Dr. Hamamoto's opinion notwithstanding. At a minimum, the dental clinic support fee is used to defray the costs associated with actual student usage of the clinic.

{¶ 55} In *Williams v. Kisling, Nestico, & Redick, LLC*, 9th Dist. No. 29630, 2022-Ohio-1044, a class action lawsuit was filed by healthcare providers against a law firm and a physician alleging fraud, civil conspiracy, and unlawful business practices. The trial court certified a class of patients who were overcharged for medical care with the aim of increasing the value of each client's legal settlement. One of the core allegations of the price-gouging scheme was that class members were overcharged for medical care compared to what would have been charged had they been able to use health insurance. The evidence showed that certain class members who sought treatment did not have health insurance, other members had health insurance coverage but expressed a preference not to use it for the purposes of pain management treatment, and still others were willing to use either Medicare or their private health insurance but were convinced by defendants not to do so.

{¶ 56} In concluding that common questions predominated over individual questions, the trial court made a general finding that defendants conspired to remove insurance companies from the equation in all cases so that the treating physician would escape scrutiny by the insurance carriers and other government agencies. *Id.* at ¶ 34. The court of appeals held the trial court failed to undertake a rigorous analysis to determine if the class members could prove liability with common evidence in light of the fact that individual class members were not similarly situated with respect to health insurance coverage. *Id.* The court reversed the trial court and remanded the case for the trial court to conduct the required analysis in the first instance. *Id.* at ¶ 37.

{¶ 57} In *Egbert*, this court affirmed a trial court's judgment denying class certification. In that case, a group of vehicle owners brought a class action against a towing company alleging every tow from a purported "private tow-away zone" was conducted without statutory authorization. *Id.* at ¶ 43. The evidence produced in the trial court showed that class members' vehicles were towed from three separate parking lots, and that

statutory compliance involved individual questions regarding the location of the lot, where signage was posted on the day of the tow, the location of the vehicle prior to tow, what language was stated on the signage on the day of the tow, and the driver of the vehicle's understanding of who was authorized to park in the lot. Based on these facts, we concluded that because the record showed generalized proof could not be applied in evaluating each tow conducted by defendant for each member of the proposed class, the trial court did not abuse its discretion in finding the predominance requirement was not met. *Id*. at ¶ 46.

{¶ 58} It is clear to this court that material legal and factual questions arise in evaluation of the implied contract and unjust enrichment claims asserted by McDermott and members of clinical support fee subclass that affect only individual members. Nevertheless, in certifying the class and subclass, the court of claims reached the following conclusion:

> For each class or subclass member, the material circumstances underlying the alleged implied contract will be the same. The university advertised the existence of the student union building and dental clinic and charged each member of the class and the subclass the student union fee and the clinical Education Support Fee, respectively, and each member of the class and the subclass paid the student union fee and the clinical Education Support Fee, respectively. It does not matter what each individual student was thinking when they paid either fee. The Court thus concludes that common issues of law or fact predominate.

(Decision at 12-13.)

{¶ 59} The court of claims based certification of the subclass on the sweeping conclusion that "[f]or each class and subclass member, the material circumstances underlying the alleged implied contract will be the same." (Decision at 12.) Even a cursory review of the evidence submitted to the court of claims reveals that the material circumstances underlying the implied contract and unjust enrichment claims asserted by McDermott and the proposed members of the clinical education support fee subclass members may not be the same. It is evident from McDermott's testimony that closure of the dental clinic may have had a disparate impact on individual members of the subclass. The evidence arguably permits the conclusion that not all subclass members were damaged when OSU closed the clinic to students on March 16, 2020.

{¶ 60} McDermott testified that the clinical experience of a first or second year dental student differs from the clinical experience of third and fourth year students. She also recalled that when the dental clinic closed, many students in the third and fourth year class had completed their respective clinical requirements, while others may not have. She also recalled that she enrolled in an elective course with a clinical component, but the course was cancelled due to the continued closure of the dental clinic due to the pandemic. Thus, a review of the evidence shows that there are questions of fact material to the claims of individual members of the subclass, as broadly drawn by the court of claims, that may not be common to all class members.

{¶ 61} In rejecting OSU's contention that not all members of the subclass were injured, the court of claims stated:

> Defendant argues that first- and second-year dental students were not harmed because they "do not work on patients in the Clinic[,]" Defendant's own administrator stated in his affidavit that first- and second-year students use the "Pre-Clinic" and the clinic. (Hamamato Affidavit, ¶ 4-5.) Therefore, the Court finds that the proposed class and subclass are not overbroad, but rather are identifiable and unambiguous.

(Decision at 7.)

{¶ 62} The analysis by the court of claims reflects an oversimplification of the threshold legal and factual issues that must be resolved in ruling on the merits of the implied contract and unjust enrichment claims asserted by McDermott and the other prospective members of the clinical education support fee subclass. The analysis assumes that the closure of the clinic resulted in a compensable injury to every class member, either at law or in equity, regardless of whether the closure impacted a particular class member's academic progress in a meaningful way. In other words, the court of claims mistakenly concluded that the right of every dental student to access the dental clinic at all times was the only material term of the alleged agreement between the parties. But McDermott's testimony suggests that dental students paid the clinical education support fee in return for a clinical experience commensurate with their individual needs and the clinical requirements of the dental program. Based on McDermott's testimony it is reasonable to conclude that the question whether OSU breached an implied contract with a particular subclass member, or retained the clinical education support fee of a particular subclass

member under circumstances where retention of the full fee was unjust, depends on the answer to individual questions of fact and the submission of proof not generally required of all subclass members.

{¶ 63} The decision issued by the Ninth District Court of Appeals in *Williams,* and by this court in *Egbert,* instruct us that a rigorous analysis of commonality and predominance entails a conscientious review of the evidence to determine that legal and factual questions predominate over any questions affecting only individual members. The court of claims decision states: "Upon review of the evidence and applicable law, the Court finds that class certification is appropriate." (Decision at 2.) The decision does not, however, mention, cite or otherwise discuss McDermott's deposition testimony. We cannot conclude a rigorous analysis of the requirements of commonality and predominance was undertaken by the court of claims in the absence of any meaningful discussion of the most critical evidence in the record.

{¶ 64} Based on the foregoing, we hold that the court of claims abused its discretion when it certified the clinical education support fee subclass without conducting a rigorous analysis to determine whether common questions of law and fact predominate over individual questions. That determination is not for this court to make in the first instance. *Williams* at ¶ 37. Because the court of claims failed to conduct a rigorous analysis of the relevant evidence to determine whether the subclass, as currently constructed, satisfied the commonality and predominance requirement of Civ.R. 23(B), we must remand this matter for the court of claims to conduct the required analysis. OSU's first, second, and third assignments of error are sustained as they pertain to the dental clinic support fee subclass.

{¶ 65} We also agree with OSU that the lack of a rigorous analysis concerning the threshold requirements of commonality and predominance likely resulted in certification of subclass that was too broadly defined. Because we are reversing the court of claims and remanding this case for the court of claims to conduct a rigorous analysis to determine threshold issues of commonality and predominance, the court of claims may either recertify the subclass, determine the subclass as currently configured does not meet the requirements of Civ.R. 23(B), or find that a differently configured subclass or subclasses should be certified. Consequently, OSU's fourth, and fifth assignments of error concerning

the typicality and specificity requirements are rendered moot by our ruling on OSU's first, second, and third assignments of error as they pertain to the subclass.  App.R. 12(A)(1)(c).

## B. Appellant's Sixth Assignment of Error

{¶ 66} In appellant's sixth assignment of error, appellant argues that the court of claims did not have jurisdiction of appellee's complaint because appellant is entitled to sovereign immunity.  We disagree.

{¶ 67} The exclusive, original jurisdiction of the Court of Claims of Ohio to hear and determine a student's action sounding in breach of contract was explained in *Collins v. Univ. of Cincinnati*, 3 Ohio App.3d 183 (1st Dist.1981), as follows:

> Prior to the enactment of the Court of Claims Act, R.C. Chapter 2743 the state of Ohio and its various instrumentalities were protected from suit under the doctrine of sovereign immunity. However, the Act waived the defense of immunity in certain situations where an instrumentality of the state was alleged to have committed an act for which, if committed by a private person, a cause of action would accrue to the injured party. R.C. 2743.02(A). Under the Act, a state university is considered to be an instrumentality of the state, thus amenable to suit. R.C. 2743.01(A). Exclusive original jurisdiction to entertain suits against the state, however, is vested in the Court of Claims and any suit filed against a state agency in a court other than the Court of Claims must be dismissed for lack of subject matter jurisdiction. R.C. 2743.03(A).

(Citations omitted.)  *Id*. at 184.

{¶ 68} There is no question that the state of Ohio has waived immunity from civil liability for claims sounding in breach of an implied contract and unjust enrichment, as those claims seek monetary relief from the state under legal theories applicable to suits between private parties.  *See Cristino v. Ohio Bur. of Workers' Comp*., 10th Dist. No. 13AP-772, 2014-Ohio-1383 (Court of Claims of Ohio had subject-matter jurisdiction over an employee's claims against the Bureau of Workers' Compensation because the claims for unjust enrichment and declaratory judgment were for legal restitution based upon a contract.); *State ex rel. Ferguson v. Shoemaker*, 45 Ohio App.2d 83, 96 (10th Dist.1975) ("[a] direct action on a contract with the state, seeking monetary relief from the state, must be commenced and prosecuted in the Court of Claims and cannot be brought in the Court

of Common Pleas."); *Great W. Cas. Co. v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 14AP-524, 2015-Ohio-1555 (Because plaintiff's unjust enrichment claim sought to impose liability on the state to pay a sum of money in compensation for the benefit that they received, the claim was a legal, not equitable action, and consequently, the court of claims had jurisdiction over the action.). The court of claims, therefore, has jurisdiction to hear and determine appellee's claims against OSU predicated on the alleged breach of an implied contract and unjust enrichment. R.C. 2743.02(A).

{¶ 69} Appellant argues however, the public duty rule shields OSU from liability to McDermott for closing the student union and dental clinic due to the pandemic. OSU further asserts that the public duty rule is a jurisdictional requirement of the Court of Claims Act. OSU did not raise this argument in opposition to the motion for class certification.

{¶ 70} In 2005, the general assembly codified the public duty rule by amending the Court of Claims Act. Under the statutory scheme, R.C. 2743.02(A)(3)(a) immunizes the state from liability for the negligent performance or nonperformance of a duty owed to the public. This court has previously treated the existence or non-existence of public duty immunity under R.C. 2744.02(A)(3)(a) as a question of liability, not jurisdiction. *Estate of Tokes v. Dept. of Rehab. & Corr.*, 10th Dist. No. 18AP-723, 2019-Ohio-1794, ¶ 17.

{¶ 71} Because the public duty rule is not a jurisdictional issue, OSU waived this argument for purposes of appeal by failing to make the argument in the court of claims. *Foy v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-723, 2017-Ohio-1065, ¶ 32 ("A party may not change its theory of the case and present new arguments for the first time on appeal.") Furthermore, because the existence of public duty immunity is an issue of liability, it may not be determined in the context of class certification. *Cullen* at ¶ 17.

{¶ 72} For the foregoing reasons, appellant's sixth assignment of error is overruled.

## V. CONCLUSION

{¶ 73} Having overruled appellant's sixth assignment of error, and appellant's first, second, third, fourth, and fifth assignments of error, in part, but having sustained appellant's first, second, third, fourth, and fifth assignments of error, in part, and having mooted appellant's fourth and fifth assignments of error, in part, we reverse the judgment

of the Court of Claims of Ohio and remand this matter for further proceedings consistent with this decision.

*Judgment affirmed in part and reversed in part;*
*cause remanded.*

LUPER SCHUSTER, P.J., and McGRATH, J., concur.

———————————