[Cite as *Burse v. Dept. of Rehab. & Corr.*, 2019-Ohio-2882.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Perrin Burse, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 17AP-452 |
| v. | : | (Ct. of Cl. No. 2017-00149) |
| Ohio Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on July 16, 2019

**On brief:** *Perrin Burse*, pro se.

**On brief:** [*Dave Yost*], Attorney General, *Howard H. Harcha, IV,* for appellee.

APPEAL from the Court of Claims of Ohio

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Perrin Burse, appeals from a judgment of the Court of Claims of Ohio dismissing Burse's complaint pursuant to the motion of defendant-appellee, the Ohio Department of Rehabilitation and Correction ("ODRC"). For the following reasons, we affirm the judgment of the Court of Claims.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} According to the complaint, Burse was incarcerated at the Chillicothe Correctional Institution ("CCI"), operated by ODRC. At CCI, Burse had three boxes of legal materials concerning his multiple pending legal actions. Burse had seven actions pending as of February 1, 2015. On February 13, 2015, Burse was temporarily transferred from the A-1 housing unit to the E-2 housing unit of CCI due to asbestos removal. Burse pleads in his complaint that he had authorization to move the three legal boxes. However, on

February 17, 2015, Unit Manager Shane Clark and Sergeant Farrar told Burse to reduce his legal materials to one box, after Sergeant Farrar stated, "I'm going to make an example out of him." (Feb. 13, 2017 Compl. at ¶ 23.)

{¶ 3} Burse then mailed some of his documents and discarded others and reduced the materials to two boxes. Burse returned the empty box to Sergeant Farrar and was told to put the remaining two boxes under his bed and to report to Inspector Corby Free's office the next morning. However, the next morning, Inspector Free did not report to work. Burse attempted to pick up his legal mail, which consisted of trial transcripts, attorney notes, and a DVD from the police interview conducted by the Springfield Township Police Department, sent to him by the Ohio Innocence Project. According to Burse, included were instructions to review the DVD, write a motion and to include relevant references to the interview on the DVD as newly discovered exculpatory evidence for his new trial hearing which was scheduled for March 17, 2015. Only the written materials were released to Burse because the DVD could only be released to a Unit Manager. Burse could not find the Unit Manager for his temporary housing, Unit Manager Clark, so he informed the Case Manager for the D-4 dormitory, Ms. Alford, who attempted to convey the message to Unit Manager Clark.

{¶ 4} The next day, on February 20, 2015, Unit Manager Clark yelled at Burse because he had more than one box of legal materials and Unit Manager Clark told Burse he had until the end of the day to reduce the materials to one box. Burse attempted to explain that Sergeant Farrar told Burse to put the two boxes under his bed. Burse was attempting to condense his materials approximately 15 minutes later, Unit Manager Clark told him he was being placed in segregation.

{¶ 5} While in segregation, Burse was unable to view or access any legal materials. On March 3, 2015, Burse was released from segregation "with no conduct report of a guilty finding." (Compl. at ¶ 27.) On March 4, 2015, Burse was "forced to mail out legal materials." (Compl. at ¶ 28.) He was permitted to view the DVD on March 6, 2015. Burse mailed the DVD to Hamilton County Courthouse. Burse filed a motion for extension of time regarding his hearing scheduled on March 17, 2015, but he received a denial of his request on March 16, 2015. Burse contends legal documents were lost and never returned. Burse contends that the loss of the documents led to the unsuccessful pursuit of his claims.

Most notably, Burse contends that ODRC's conduct deprived him of the opportunity to present the DVD to the First District Court of Appeals, which would have exonerated him of the underlying theft convictions.

{¶ 6} Burse filed his complaint before the Court of Claims on February 13, 2017, alleging that ODRC employees violated provisions of the Revised Code and the Ohio Administrative Code, in addition to violating ODRC policies. Burse named 17 individual employees, including the Chillicothe Institution's Warden, and CCI as defendants. On February 14, 2017, the Court of Claims dismissed the 17 individuals because only state agencies and instrumentalities can be defendants in the court of claims. ODRC filed a motion to dismiss the complaint on March 14, 2017, according to Civ.R. 12(B)(1) and (6). The Court of Claims dismissed the complaint on May 23, 2017.

## II. ASSIGNMENTS OF ERROR

{¶ 7} Burse filed a timely appeal and raised the following assignments of error for our review:

> [1.] FAILURE OF THE OHIO COURT OF CLAIMS, TO DECLARE THAT THE NAMED EMPLOYEES OF THE CHILLICOTHE CORRECTIONAL INSTITUTION ACTED M,ANIFESTLY OUTSIDE THE SCOPE OF THEIR EMPLOYMENT, AND ARE THEREFORE NOT IMMUNE FROM LIABILITY PURSUANT TO ORC 9.86, AND 2743.02.
>
> [2.] FAILURE OF THE OHIO COURT OF CLAIMS, TO DECLARE THAT THE NAMED EMPLOYEES COMMITTED THE ACT OF GROSS NEGLIGENCE, THAT WAS THE PROXIMATE CAUSE OF PLAINTIFF-APPELLANT BURSE NOT BEING ABLE TO TIMELY DELIVER THE EXONERATING EVIDENCE TO THE FIRST DISTRICT COURT OF APPEALS HEARING FOR THE 'NEW TRIAL' ON MARCH 17, 2015, DUE TO THE WRONGFUL COMMITTAL TO SEGREGATION, AND THE WITHHOLDING OF HIS TIME SENSITIVE LEGAL MAIL FROM THE OHIO INNOCENCE PROJECT.
>
> [3.] FAILURE OF THE OHIO COURT OF CLAIMS, TO DECLARE THAT THE NAMES EMPLOYEESCOMMITTED THE ACT OF DELIBERATE INDIFFERENCE, (1) MIS-HANDLING OF PLAINTIFF-APPELLANT BURSE'S EXONERATING EVIDENE', A DVD, FROM THE OHIO INNOCENE PROJECT; (2) THE MALICIOUS AND WRONGFUL COMMITTAL TO SEGREGATION OF BURSE.

[4.] FAILURE OF THE OHIO COURT OF CLAIMS, TO DECLARE THAT THE NAMED EMPLOYEES COMMITTED INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UPON PLAINTIFF APPELLANT BURSE BY; (1) GENERATING A FALSE CONDUCT REPORT AND SUBSEQUENTLY CAUSING THE WRONGDUL COMMITTAL TO SEGREGATION, (2) THE MIS-HANDLING OF THE EXONERATING EVIDENCE, THAT WAS TO BE PRESENTED TO THE FIRST DISTRICT COURT OF APPEALS BY MARCH 10, 2015, FOR A MARCH 17, 2015 HEARING FOR A 'NEW TRIAL'.

(Sic passim.)

## III.  STANDARD OF REVIEW

{¶ 8}  The Court of Claims granted ODRC's motion to dismiss made pursuant to Civ.R. 12(B)(1) and (6).  Civ.R. 12(B)(1) permits dismissal of a complaint where a trial court lacks subject-matter jurisdiction.  *Guillory v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 07AP-861, 2008-Ohio-2299, ¶ 6.  Subject-matter jurisdiction involves " 'a court's power to hear and decide a case on the merits and does not relate to the rights of the parties.' " *Robinson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 10AP-550, 2011-Ohio-713, ¶ 5, quoting *Vedder v. Warrensville Hts.*, 8th Dist. No. 81005, 2002-Ohio-5567, ¶ 14.  The standard is whether any cause of action cognizable by the forum has been raised in the complaint.  *Guillory* at ¶ 6, citing *Milhoan v. E. Local School Dist. Bd. of Edn.*, 157 Ohio App.3d 716, 2004-Ohio-3243, ¶ 10 (4th Dist.).  The appellate court's review of a trial court's dismissal of an action pursuant to Civ.R. 12(B)(1) is de novo.  *Robinson* at ¶ 5, citing *Hudson v. Petrosurance, Inc.*, 10th Dist. No. 08AP-1030, 2009-Ohio-4307, ¶ 12.

{¶ 9}  A motion to dismiss for failure to state a claim on which relief can be granted tests the sufficiency of the complaint.  *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, ¶ 11.  In reviewing a complaint under a Civ.R. 12(B)(6) analysis, a court must presume that all factual allegations in the complaint are true and make all reasonable inferences in the plaintiff's favor.  *Id.* at ¶ 12.  " '[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.' " *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, ¶ 5, quoting *York v. Ohio State Hwy. Patrol*, 60 Ohio

St.3d 143, 145 (1991). The appellate court reviews de novo a trial court's decision to dismiss a claim under Civ.R. 12(B)(6). *Robinson* at ¶ 6.

## IV. DISCUSSION

{¶ 10} Burse argued his four assignments of error together and we thus likewise consider them together. The Court of Claims determined that Burse's claim, although titled as negligence, was actually a claim for the denial of access to the courts. Burse's claim regarding the mishandling of his mail is a challenge to the conditions of confinement. These claims raise constitutional claims over which the Court of Claims does not have subject-matter jurisdiction. The Court of Claims also determined that it did not have jurisdiction over any claims of violations of criminal statutes. Finally, the Court of Claims determined that no cause of action existed for any violation of internal rules or policies and Burse's challenge to his placement in segregation involved executive functions and a high degree of official discretion, noting that ODRC is immune from liability for such decisions. As a result, the Court of Claims granted ODRC's motion to dismiss Burse's complaint.

{¶ 11} The Court of Claims Act permits individuals to sue the state in the Court of Claims for liability to be determined with the same rules of law applicable to suits between private parties. R.C. 2743.02(A)(1). Burse argues that the Court of Claims erred in granting ODRC's motion to dismiss because his complaint, exhibits, interrogatories, and affidavits provided evidence that ODRC employees demonstrated gross negligence, deliberate indifference, and intentionally inflicted on Burse emotional distress. Burse in his complaint also alleges that ODRC violated its own internal rules or policies. Violations of internal rules or policies in a prison do not " 'support a cause of action by themselves, even though violations of internal rules and policies may be used to support a claim for negligence.' " *Peters v. Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-1048, 2015-Ohio-2668, ¶ 10, quoting *Triplett v. Warren Corr. Inst.*, 10th Dist. No. 12AP-728, 2013-Ohio-2743, ¶ 10.

{¶ 12} However, a court must examine the underlying nature of the complaint, not necessarily being limited by the characterization provided by a plaintiff. The inverse is also true: "The mere fact that claims in a complaint are couched in certain legal terms is insufficient to confer jurisdiction upon a court. * * * Instead, in order to resolve the issue of whether a court has subject-matter jurisdiction over a party's claims, *the court must look beyond the language used in the complaint and examine the underlying nature of the claims.*" (Citation omitted and emphasis added.) *Guillory* at ¶ 11.

{¶ 13} Despite arguing that the ODRC employees committed gross negligence, deliberate indifference, intentionally caused Burse emotional distress, and violated internal rules and policies, Burse's claims are more appropriately an allegation that ODRC employees denied him access to the courts based on unlawful conditions of confinement; Burse's claims do not sound in negligence.  Burse complains he was forced to reduce his legal materials to one box, he was placed in segregation wrongfully and denied access to his legal materials, thereby being unable to view his DVD sent by the Ohio Innocence Project and he claims the mail room mishandled his mail, causing some items to be lost.  Neither a denial of access to the courts or a claim based on unlawful conditions of confinement are actionable in the Court of Claims.

{¶ 14}  In *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *overruled in part*, the United States Supreme Court held that access to the courts is a constitutional right guaranteed to all prisoners.  In *Lewis v. Casey*, 518 U.S. 343 (1996), the United States Supreme Court held that *Bounds* did not recognize an independent right for prisoners to have an adequate law library, but rather, determined that a prisoner must establish that an inadequate library or access to legal material caused actual harm.  "The fundamental constitutional right of access to the courts requires that prisoners have a meaningful opportunity to present claims to the court." *State ex rel. Carter v. Schotten*, 70 Ohio St.3d 89, 92 (1994), citing *Bounds*.  However, the Court of Claims lacks subject-matter jurisdiction to consider claims arising from alleged violations of the U.S. Constitution.  *Guillory* at ¶ 12.  Claims of denial of access to the courts are properly treated as actions for alleged violations of constitutional rights pursuant to 42 U.S.C. 1983 ("§ 1983").  *Id.* at ¶ 12, citing *Bleicher v. Univ. of Cincinnati College of Med.*, 78 Ohio App.3d 302 (10th Dist.1992).  Likewise, inmate complaints regarding conditions of confinement are treated as claims arising under § 1983.  *Guillory* at ¶ 12, citing *Schotten* at 91.  This court has consistently held that the Court of Claims does not have jurisdiction over § 1983 actions.  *Deavors v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 98AP-1105 (May 20, 1999).  We agree with the Court of Claims that it does not have subject-matter jurisdiction over these claims and that it properly dismissed them.

{¶ 15} Burse's action includes allegations of violations of criminal law, including harassment, interfering with civil rights, tampering with records, retaliation, attempted corrupt activity, conspiracy, securing writings by deception, intimidation, obstruction of

official business, falsification, complicity, dereliction of duty, perjury, and forgery. The Court of Claims has exclusive, original jurisdiction over only civil actions against the State permitted by the waiver of immunity contained in R.C. 2743.02 and does not have jurisdiction over criminal matters against the State. *Troutman v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 03AP-1240, 2005-Ohio-334, ¶ 10. However, the Supreme Court of Ohio has recently clarified that R.C. 2307.60, providing for civil recovery for criminal acts, is a viable claim, but the high court limited its decision to that issue. *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, ¶ 11. The high court stated: "We make no ruling today beyond answering the certified-conflict question. Any ensuing issues regarding how the statute operates or what a plaintiff must do to prove a claim under R.C. 2307.60(A)(1) are beyond the scope of this appeal. Resolution of issues of that type by this court must await an appeal in a case in which the issues are properly before the court." *Id.*

{¶ 16} We recognize in our Civ.R. 12(B)(6) de novo review that Burse may have alleged in his complaint a private, civil cause of action for violation of criminal statutes. But we also continue to recognize that because the Court of Claims does not have jurisdiction over alleged criminal violations, it does not have jurisdiction like a common pleas court would to determine whether or not a crime has occurred for the purpose of awarding civil penalties for criminal violations of state statute. Accordingly, the Court of Claims does not have jurisdiction over Burse's alleged criminal violations by ODRC or its employees, and the Court of Claims properly dismissed these claims.

{¶ 17} We also note that the language in R.C. 2743.02 that "the state" shall "have its liability determined [in accordance] to suits between private parties," means that the State cannot be sued for its legislative or judicial functions, or the exercise of an executive function involving a high degree of official judgment or discretion. *Deavors*, citing *Reynolds v. State*, 14 Ohio St.3d 68, 70 (1984). ODRC is entitled to discretionary immunity for decisions on inmate placement under the doctrine set forth in *Reynolds*. In *State ex rel. Larkins v. Wilkinson*, 79 Ohio St.3d 477, 479 (1997), the Supreme Court of Ohio recognized that "[a]bsent evidence that the challenged institutional action would affect the inmate's duration of confinement, an inmate has no liberty interest in being free of disciplinary or administrative segregation because such segregation does not impose an atypical and

significant hardship on the inmate."  Therefore, ODRC is generally immune from liability arising from decisions regarding inmate placement.  *Troutman* at ¶ 9.

{¶ 18}   We recognize that according to the ODRC website, Burse was released from prison on March 17, 2017.  *See* Ohio Department of Rehabilitation and Correction Offender Search, available at https://appgateway.drc.ohio.gov/OffenderSearch (last visited July 15, 2019.)  Further, Burse raised his § 1983 claims based on these facts in federal court and ODRC was granted summary judgment because Burse failed to exhaust his administrative remedies.  *See Burse v. Jenkins*, S.D. Ohio No. 2:15-cv-2992 (Dec. 4, 2017).  Accordingly, Burse's four assignments of error are overruled.

## V.  CONCLUSION

{¶ 19}  For the foregoing reasons, Burse's four assignments of error are overruled and the judgment of the Court of Claims of Ohio is affirmed.

*Judgment affirmed.*

KLATT, P.J., and SADLER, J., concur.