[Cite as *McDermott v. Ohio State Univ.*, 2025-Ohio-396.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Morgan McDermott, | : | |
| Plaintiff-Appellee, | : | No. 22AP-76 |
| | | (Ct. of Cl. No. 2020-00286JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| The Ohio State University, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 6, 2025

**On brief:** *Merriman Legando Williams & Klang, LLC, Drew Legando, Tom Merriman,* and *Edward S. Jerse*; *Klafter Lesser LLP, Jeffrey A. Klafter,* and *Seth R. Less,* for appellee. **Argued:** *Drew Legando.*

**On brief:** *Squire Patton Boggs (US) LLP, John R. Gall, Traci L. Martinez, E. Joseph D'Andrea, Elizabeth P. Helpling,* and *Roger M. Gold,* for appellant. **Argued:** *John R. Gall.*

APPEAL from the Court of Claims of Ohio
ON REMAND from the Supreme Court of Ohio

LUPER SCHUSTER, J.

{¶ 1} We consider this case on remand from the Supreme Court of Ohio, which reversed our decision in *McDermott v. Ohio State Univ.*, 2022-Ohio-4780 (10th Dist.) ("*McDermott I*") and instructed this court to determine whether discretionary immunity bars the claims of plaintiff-appellee, Morgan McDermott, against defendant-appellant, The Ohio State University ("Ohio State"). *McDermott v. Ohio State Univ.*, 2024-Ohio-1227. Because we find discretionary immunity applies, we remand this matter to the Court of Claims of Ohio with instructions to dismiss the action.

## I.  Facts and Procedural History

{¶ 2}   During the Spring 2020 semester, McDermott was enrolled as a full-time, third-year student at Ohio State's College of Dentistry.  Ohio State charged—and McDermott paid—two fees for the Spring 2020 semester that are at issue in this case: (1) a $74.40 Student Union Fee, which Ohio State used to "help[] fund the Ohio Union facility, student organization and student meeting space, and cutting-edge venues that support student programming," and (2) a $1,636 Clinical Education Support Fee, which "pa[id] for repair, maintenance, and replacement of preclinical and clinical instruments and equipment, preclinical and clinical supplies, sterilization services, and other expenses related to the preclinical laboratory and predoctoral dental clinics." (Def.'s Mot. for Summ. Jgmt. at Ex. F; Def.'s Mot. for Summ. Jgmt., Ex. B at 25.)  McDermott also paid the Clinical Education Support Fee for the Summer 2020 semester.

{¶ 3}   On March 16, 2020, before the end of the Spring 2020 semester, the Ohio Union and the dental preclinic and clinic closed to students due to the COVID-19 pandemic.  The Ohio Union and dental preclinic and clinic remained closed throughout the remainder of the Spring 2020 semester.  The College of Dentistry reopened the dental clinic to the class of 2021 (McDermott's class) during the Summer 2020 semester, on June 29, 2020.

{¶ 4}   In a complaint filed May 4, 2020, McDermott asserted claims for breach of contract and unjust enrichment against Ohio State.  In pleading her claim for breach of contract, McDermott alleged that her payment of tuition and fees created a contract with Ohio State, which included Ohio State's promise to provide access to the Ohio Union and the dental clinic.  McDermott claimed that Ohio State breached this promise, and she was damaged in the amount of the prorated portion of the fees she paid for the period the facilities were closed.

{¶ 5}   In pleading her claim for unjust enrichment, McDermott alleged that the Student Union Fee and Clinical Education Support Fee were intended to cover her use of the Ohio Union and the dental clinic throughout the semester for which she paid each respective fee.  Consequently, McDermott claimed that it was unjust and inequitable for Ohio State to retain the full amount of the fees when it had closed each facility for part of the semesters for which she paid the fees.  Again, McDermott sought damages in the amount of the prorated portion of the fees she paid for the period the facilities were closed.

{¶ 6} In addition to asserting claims on her own behalf, McDermott's complaint purported to assert identical claims on behalf of a putative class and subclass. The putative class consisted of students enrolled at the Columbus campus of Ohio State who paid the Student Union Fee for the Spring 2020 semester, and the putative subclass consisted of students enrolled in the College of Dentistry who paid the Clinical Educational Support Fee for the Spring 2020 and/or Summer 2020 semesters. On May 14, 2021, McDermott moved to certify the class and subclass, arguing that she demonstrated all the requirements of Civ.R. 23. Ohio State opposed class certification.

{¶ 7} While McDermott's motion for class certification was pending, Ohio State moved for summary judgment on McDermott's claims. Ohio State maintained that an express contract governed its relationship with McDermott, and that express contract did not guarantee McDermott access to the Ohio Union or the dental clinic. Ohio State also contended that McDermott suffered no injury, and thus, she could not recover for breach of contract. Finally, Ohio State argued that McDermott's claim for unjust enrichment failed due to the existence of the contract between the parties.

{¶ 8} In response, McDermott contended that her payment of the Student Union Fee and the Clinical Education Support Fee created an implied-in-fact contract with Ohio State that entitled her to access and use the Ohio Union and dental clinic during the entire semester for which she paid the fees.

{¶ 9} The Court of Claims decided McDermott's motion for class certification but did not rule on Ohio State's motion for summary judgment. In a judgment issued December 27, 2021, the Court of Claims granted McDermott's motion and certified the class and subclass she sought.

{¶ 10} Ohio State appealed the Court of Claims' December 27, 2021 judgment, and it assigned six assignments of error. Ohio State's first five assignments of error challenged the Court of Claims' class certification determination. In resolving those assignments of error, we first concluded that "the [C]ourt of [C]laims did not abuse its discretion in certifying the student[-]union[-]facility[-]fee class." *McDermott I*, 2022-Ohio-4780, at ¶ 45. We reached a different outcome, however, with regard to the clinical-education-support-fee subclass. We held that the Court of Claims abused its discretion when it certified the subclass "without conducting a rigorous analysis to determine whether

common questions of law and fact predominate over individual questions." *Id*. at ¶ 64. Consequently, we reversed the certification of the subclass and remanded the case for the Court of Claims to conduct the necessary rigorous analysis. *Id*. at ¶ 65.

{¶ 11} As a final matter, we addressed Ohio State's sixth assignment of error. That assignment of error stated:

> In its Decision of December 27, 2021, the trial court erred and abused its discretion when it certified the Class and Sub-class in a suit over which the court lacked jurisdiction because The Ohio State University is an agency or instrumentality of the State, and its decision to temporarily close or restrict access to its facilities in the face of the COVID-19 pandemic was a basic policy decision characterized by a high degree of official judgment and discretion.

(Appellant's Brief at viii.)

{¶ 12} Prior to assigning this error, Ohio State had not challenged the Court of Claims' subject-matter jurisdiction. Nevertheless, under the sixth assignment of error, Ohio State argued, in a single paragraph at the end of its appellate brief, that discretionary immunity applied because Ohio State is an agent or instrumentality of the state, and its decision to close the Ohio Union and the dental clinic in the face of a global pandemic was a policy decision made with a high degree of judgment or discretion. Therefore, according to Ohio State, discretionary immunity jurisdictionally barred McDermott's claims. We found this argument to be waived and overruled the sixth assignment of error. *McDermott I* at ¶ 71.

{¶ 13} Ohio State appealed our decision, and the Supreme Court of Ohio accepted the appeal on a single proposition of law: "The Court of Claims does not have subject matter jurisdiction to hear claims against the State that are subject to discretionary immunity." Supreme Court of Ohio Case No. 2023-0202, Memo. in Response at 6; 04/25/2023 Case Announcements, 2023-Ohio-1326. The Supreme Court held the case for the decision in *Smith v. Ohio State University*, 2024-Ohio-764, which was already before the court on an identical proposition of law. In *Smith*, the Supreme Court found in Ohio State's favor, holding that "the Court of Claims does not have subject-matter jurisdiction over suits brought against the state when discretionary immunity applies." *Smith* at ¶ 21. After deciding *Smith*, the Supreme Court remanded this matter to us to determine whether discretionary immunity applied. We requested the parties provide supplemental briefing

on that issue. Having reviewed that briefing and heard additional oral argument, we now address whether discretionary immunity bars McDermott's claims against Ohio State.

## III. Discussion

{¶ 14} Ohio State's claim of discretionary immunity challenges the Court of Claims' subject-matter jurisdiction over McDermott's claims as "the Court of Claims does not have subject-matter jurisdiction when discretionary immunity applies." *Smith* at ¶ 16. Subject-matter jurisdiction involves a court's power to hear and decide a case on the merits. *Lowery v. Ohio Dept. of Rehab. & Corr.*, 2015-Ohio-869, ¶ 6 (10th Dist.). A court's subject-matter jurisdiction cannot be waived and may be raised at any time. *State ex rel. Bond v. Velotta Co.*, 91 Ohio St.3d 418, 419 (2001). And parties cannot confer subject-matter jurisdiction on a court; nor can it arise based on estoppel. *Ohio Vendors Representative Commt. v. Opportunities for Ohioans with Disabilities/Bur. of Servs. for the Visually Impaired*, 2022-Ohio-1252, ¶ 14 (10th Dist.).

{¶ 15} "When subject-matter jurisdiction is challenged, ' "the party claiming jurisdiction bears the burden of demonstrating that the court has jurisdiction over the subject matter." ' " *Pivonka v. Corcoran*, 2020-Ohio-3476, ¶ 34, quoting *Marysville Exempted Village School Bd. of Edn. v. Union Cty. Bd. of Revision*, 2013-Ohio-3077, ¶ 10, quoting *Ohio Natl. Life. Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir. 1990). Thus, once Ohio State contested the Court of Claims' jurisdiction, McDermott—the party seeking to bring her claims in the Court of Claims—assumed the burden to prove the inapplicability of discretionary immunity. She fails to meet this burden.

{¶ 16} "Under the doctrine of sovereign immunity, 'a state is not subject to suit in its own courts unless it expressly consents to be sued.' " *Smith* at ¶ 12, quoting *Proctor v. Kardassilaris*, 2007-Ohio-4838, ¶ 7. As amended in 1912, the Ohio Constitution permits "[s]uits [to] be brought against the state, in such courts and in such manner, as may be provided by law." Ohio Const., art. I, § 16. In 1975, the General Assembly enacted the Court of Claims Act, R.C. 2743.01 et seq., in which it waived sovereign immunity and consented to be sued and have its liability determined in the Court of Claims.

{¶ 17} In relevant part, R.C. 2743.02(A)(1) states, "The state hereby waives its immunity from liability . . . and consents to be sued, and have its liability determined, in the [C]ourt of [C]laims created in this chapter in accordance with the same rules of law

applicable to suits between private parties." The Court of Claims "has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity" in R.C. 2743.02. R.C. 2743.03(A)(1). Consequently, the Court of Claims' jurisdiction is "tied to the scope of the state's waiver of immunity and consent to be sued in R.C. 2743.02." *Smith v. Ohio State Univ.*, 2024-Ohio-5887, ¶ 21 (10th Dist.).

{¶ 18} In addressing the meaning of R.C. 2743.02(A)(1), the Supreme Court of Ohio has determined that "the state's potential liability under R.C. Chapter 2743 is not unbounded." *Wallace v. Ohio Dept. of Commerce*, 2002-Ohio-4210, ¶ 34. According to the Supreme Court:

> The language in R.C. 2743.02 that "the state" shall "have its liability determined . . . in accordance with the same rules of law applicable to suits between private parties . . ." means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion.

*Reynolds v. State*, 14 Ohio St.3d 68 (1984), paragraph one of the syllabus. When the state is sued for making highly discretionary policy decisions pursuant to its legislative, judicial, executive, or planning functions, the Court of Claims lacks jurisdiction over the suit because the state has not waived its sovereign immunity for those decisions. *Smith*, 2024-Ohio-764, at ¶ 16; *accord Risner v. Ohio Dept. of Transp.*, 2015-Ohio-4443, ¶ 24 (holding that the state "is immune from any liability arising from the decisions made pursuant to its discretionary function"). The Supreme Court has referred to this jurisdictional bar to suit against the state as "discretionary immunity." *Smith*, 2024-Ohio-764, at ¶ 16.

{¶ 19} This court has applied discretionary immunity to executive and planning decisions that compare with decisions a private party could make. *See Skorvanek v. Ohio Dept. of Rehab. & Corr.*, 2018-Ohio-3870, ¶ 83-84 (10th Dist.) (decisions of the Ohio Department of Rehabilitation and Correction regarding staff allocation entitled to discretionary immunity); *Young v. Univ. of Akron*, 2007-Ohio-4663, ¶ 17 (10th Dist.) (university approval of changes to project specifications entitled to discretionary immunity). Thus, decisions within the ambit of discretionary immunity are not limited to those made when the state is exercising authority exclusive to the legislative, judicial, or executive branches of government.

{¶ 20} Additionally, the discretionary immunity doctrine is not limited to tort claims. This court recently rejected the argument "that the doctrine of discretionary immunity does not apply to contract claims that seek to impose liability for the state's exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Smith*, 2024-Ohio-5887, at ¶ 45. The focus of the discretionary immunity doctrine "is not on the type of claim being made, but on the governmental decision being challenged." *Id.* at ¶ 43. This means a breach of contract claim can be barred by the discretionary immunity doctrine. In *Smith v. Ohio State University*, 2024-Ohio-5887, on remand from the Supreme Court of Ohio, we considered the application of the discretionary immunity doctrine to breach of contract claims against Ohio State based on its decisions to transition from in-person instruction to virtual learning and to restrict access to the campus. After considering the evidence in that case, we had "no trouble concluding that those decisions constituted basic policy decisions, characterized by the exercise of a high degree of official judgment or discretion." *Smith*, 2024-Ohio-5887, at ¶ 32.

{¶ 21} Here, McDermott primarily asserts claims for breach of contract against Ohio State. We recognize that McDermott also pled claims for unjust enrichment in her complaint. However, at this point in the litigation, "[t]he parties agree that their relationship is contractual in nature." (Pl.'s Opp. to Def.'s Mot. for Summ. Jgmt. at 4.) The parties only differ regarding whether that contract is an express contract (Ohio State's position) or an implied-in-fact contract (McDermott's position). When a student enrolls in a university, pays her tuition and fees, and attends class, the resulting relationship is reasonably construed as contractual in nature. *Bremar v. Ohio Univ.*, 2022-Ohio-1382, ¶ 18 (10th Dist.); *Merlitti v. Univ. of Akron*, 2019-Ohio-4998, ¶ 22 (10th Dist.). Thus, the parties' agreement that a contract exists between them is consistent with the law.

{¶ 22} Generally, a party cannot recover under a claim for unjust enrichment when the subject matter of that claim is covered by an express contract or an implied-in-fact contract. *Akron v. Baum*, 2021-Ohio-4150, ¶ 17 (9th Dist.); *LaVangie v. Raleigh*, 2019-Ohio-810, ¶ 16 (2d Dist.); *accord Wuerth v. Nationwide Energy Partners, L.L.C.*, 2023-Ohio-3436, ¶ 25 (10th Dist.) ("[B]ecause unjust enrichment is an equitable remedy, this doctrine generally does not apply when a contract exists between the parties covering the

same subject."). Consequently, our analysis centers on McDermott's claims for breach of contract.

{¶ 23} Because the focus of the limitation on the state's consent to be sued is on the governmental decision being challenged, we must determine what decisions McDermott claims Ohio State has liability for making—that is, what is the basis of her breach of contract claim. In her complaint, McDermott alleged a contract existed between herself and Ohio State, created when McDermott "pa[id] [Ohio State] tuition and fees." (Compl. at ¶ 30, 37.) McDermott further alleged that Ohio State made two promises in the contract: (1) "[a]s part of the contract, and in exchange for paying [Ohio State's] Student Union Facility Fee, [Ohio State] promised to provide certain services to Plaintiff . . . including participation in the myriad services provided by the Ohio Union," (compl. at ¶ 31), and (2) "[a]s part of the contract, and in exchange for paying [Ohio State] College of Dentistry's Clinical Support Fee, [Ohio State] promised to provide certain services to Plaintiff . . . including daily access to the [Doctor of Dental Surgery] clinics to enable [her] to satisfy the clinical requirements for a [Doctor of Dental Surgery] from [Ohio State]," (compl. at ¶ 38). Finally, McDermott contended that Ohio State failed to provide the contracted-for services, and thus, she suffered damages in the amount of the prorated portion of the fees paid for the period the facilities were closed.

{¶ 24} When McDermott opposed Ohio State's motion for summary judgment, she summarized her claim for breach of contract:

> McDermott brought a very simple case for breach of contract, alleging that she paid the Student Union Fee to entitle her to access the Union throughout the semester for which the fee was paid; and that she paid the Dental Clinic Support Fee to entitle her to use the dental clinic and labs throughout the semester for which that fee was paid. . . .
>
> McDermott performed her obligations under the Union and Clinic contracts: she paid the fees. But [Ohio State] failed to perform its obligations under those contracts: it did not provide McDermott the opportunity to use the Union or the dental clinic for the entire semesters at issue—it only provided partial performance. McDermott asserts that the proper measure of damages under these circumstances is a pro-rated portion of the fee she paid; that is, her damages are equal to 38.8% of each of the unrefunded Spring semester Union and Dental Clinic fees and a pro-rata portion of her Summer

semester Dental Clinic fees—in other words, her claim for damages takes into account [Ohio State's] partial performance.

(Pl.'s Opp. to Def.'s Mot. for Summ. Jgmt. at 3-4.) McDermott also refuted Ohio State's argument that the contracts at issue were express, written agreements, that did not provide a right for students to use the student union or dental clinic. She argued that the relevant written materials did "refer to student use of the facilities . . . and . . . even if a student's right to use the facilities associated with the fees is not explicit in the writings, it is inherent in the nature of the agreements." (Pl.'s Opp. to Def.'s Mot. for Summ. Jgmt. at 5.) Thus, McDermott claimed that she had contractual rights, either expressly or implicitly, to use the student union and dental clinic, and Ohio State breached their contract by closing these facilities and not providing her the opportunity to use them.

{¶ 25} Ohio State contends that it is entitled to immunity for the decision to close the facilities. In asserting discretionary immunity, Ohio State asserts that the decision "to temporarily limit access to campus facilities reflected a very basic policy to protect by all practical means the health and safety of [Ohio State's] students, faculty, and staff from the highly transmissible COVID virus." (Appellant's Supp. Brief at 22-23.) Regarding these closures, Ohio State cites affidavit testimony of Kristine Devine, Vice President of Operations and Deputy Chief Financial Officer in the Office of Business and Finance at Ohio State. As to the Ohio Union, Devine stated, "Due to the COVID-19 pandemic, [Ohio State] closed the Student Union on March 16, 2020." (Devine Aff. at ¶ 8.) Ohio State also cites the affidavit testimony of Dr. Darryl Hamamoto, Associate Dean for Academic Affairs and Associate Professor at Ohio State's College of Dentistry. As to the dental clinic, Dr. Hamamoto stated, "In response to the COVID-19 pandemic, the [College of Dentistry] partially closed the Clinic on March 16, 2021 [sic], except as to emergency dental procedures." (Hamamoto Aff. at ¶ 15.) Ohio State asserts these closure decisions were entitled to discretionary immunity, and therefore the Court of Claims lacks subject-matter jurisdiction over any claim based on these decisions.

{¶ 26} In her supplemental brief on the issue of whether discretionary immunity applies, McDermott asserts that her claim against Ohio State is not based on the decision to close the Ohio Union and the dental clinic to students. McDermott argues that the operative decision concerning Ohio State's discretionary immunity is Ohio State's determination not to pay her prorated refunds for the time the Ohio Union and dental clinic

were closed. She states: "The act at issue here is OSU's failure to pro-rate the fees students paid after the Union and Dental Clinic were closed. McDermott does not challenge—and has expressly disclaimed any challenge—to the university's decision to close campus and transition to online learning in the face of the pandemic." (McDermott Supp. Brief at 5-6.) She therefore argues that any immunity relating to the closure decision "is simply not at issue here," declaring it as "irrelevant." (McDermott Supp. Brief at 2, 6.)

{¶ 27} McDermott's focus, in this remand, on Ohio State's decision not to refund fees is misplaced. She has never alleged that her contract with Ohio State contained a term that required Ohio State to pay students refunds if Ohio State closed the Ohio Union or dental clinic during the semester. Any fees she would be entitled to have reimbursed would arise as damages from a finding that Ohio State breached the terms of the contract by closing the facilities. Ohio State's alleged contractual liability is based on the decision to close the facilities. Moreover, those contractual damages would only be colorable if the decision to close the facilities is not subject to discretionary immunity. Thus, the decision to forego refunds is not a decision that could result in Ohio State's liability for breach of contract. Thus, by simply dismissing, as inconsequential, Ohio State's assertion of immunity for any claim based on the decision to close the Ohio Union and dental clinic, McDermott fails to carry her burden and refute the substance of Ohio State's immunity claim regarding the actual operative facts concerning jurisdiction.

{¶ 28} Further, the relevant jurisdictional facts are sufficiently developed in this matter for this court to determine the discretionary immunity issue. The decision to close the Ohio Union and dental clinic due to the COVID-19 pandemic only reasonably can be construed as being based on health and safety considerations—weighed against the basic functions of these facilities designed for in-person student gathering and learning. We take judicial notice that once COVID-19 began to spread in the United States, the grave danger associated with this easily transmissible disease became quickly and commonly known in Ohio. *See* Evid.R. 201(B) (a court may take judicial notice of a fact not subject to reasonable dispute that is "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); Executive Order 2020-01D ("A state of emergency is declared for the entire State to protect the well-being of the citizens of [] Ohio from the

dangerous effects of COVID-19, to justify the authorization of personnel of State departments and agencies as are necessary, to coordinate the State response to COVID-19, and to assist in protecting the lives, safety, and health of the citizens of Ohio."). *See also*, *In re Tolling of Time Requirements Imposed by Rules Promulgated by the Supreme Court & Use of Tech.*, 158 Ohio St.3d 1447 (2020) (noting that, in early March 2020, "the Governor of Ohio . . . declared a state of emergency in Ohio in response to COVID-19 . . . the World Health Organization publicly characterized COVID-19 as a global 'pandemic' requiring 'urgent and aggressive action' to control the spread of COVID-19 . . . [and] the President of the United States declared a National Emergency"). Thus, the appropriate response required drastic and unprecedented action by leaders at various levels of government to reduce the transmission of the disease from person to person. This included the closure of campus facilities. Considering the significant dangers associated with this pandemic, and the fundamental deviation from normal usage of these facilities, there is no reasonable dispute that the Ohio Union and the dental clinic were closed to help protect the health and safety of Ohio State's students, faculty, and staff, and that this was a basic policy decision that involved a high degree of official judgment or discretion. Accordingly, we conclude discretionary immunity applies in this case.

## IV. Disposition

{¶ 29} Because we conclude discretionary immunity applies in this case, we remand this matter to the Court of Claims of Ohio with instructions to dismiss this case for lack of subject-matter jurisdiction.

*Cause remanded with instructions.*

JAMISON, P.J., dissents.
EDELSTEIN, J., concurs.

JAMISON, P.J., dissenting.

{¶ 30} Because I believe the record does not contain sufficient evidence to determine whether discretionary immunity applies, I would remand this case to the Court of Claims for further development of the record. Therefore, I respectfully dissent.

{¶ 31} As an initial matter, I agree with the majority decision that we must examine Ohio State's decision to close the Ohio Union and the dental clinic to determine whether

discretionary immunity applies. However, I strongly disagree with the majority decision's evaluation of the adequacy of the evidence in the record.

{¶ 32} In arguing that it qualifies for discretionary immunity, Ohio State claims that it closed the Ohio Union and the dental clinic based on the "very basic policy to protect by all practical means the health and safety of [Ohio State's] students, faculty, and staff from the highly transmissible COVID virus." (Appellant's Supp. Brief at 22-23.) The evidence Ohio State relies upon for this assertion, however, is silent regarding the policy motivations behind Ohio State's decisions to close the Ohio Union and the dental clinic. First, Ohio State points to the affidavit testimony of Kristine Devine, Vice President of Operations and Deputy Chief Financial Officer in the Office of Business and Finance at Ohio State. Regarding the closure of the Ohio Union, Devine merely stated, "Due to the COVID-19 pandemic, [Ohio State] closed the Student Union on March 16, 2020." (Devine Aff. at ¶ 8.) Second, Ohio State points to the affidavit testimony of Dr. Darryl Hamamoto, Associate Dean for Academic Affairs and Associate Professor at Ohio State's College of Dentistry. Regarding the closure of the dental clinic, Dr. Hamamoto merely stated, "In response to the COVID-19 pandemic, the [College of Dentistry] partially closed the Clinic on March 16, 2021 [sic], except as to emergency dental procedures." (Hamamoto Aff. at ¶ 15.) Neither Devine nor Dr. Hamamoto mentioned health or safety when testifying about the closure of the facilities. Consequently, based on this evidence, I cannot conclude that health and safety was the policy behind the decisions to close the Ohio Union and the dental clinic.

{¶ 33} Furthermore, as McDermott indicates in her supplemental briefing, the record contains no evidence detailing Ohio State's decision-making process for closing the Ohio Union or the dental clinic. Ohio State points to no evidence in the record as to who made the decisions to close either or both facilities, whether deliberation occurred prior to the closure determinations, whether alternatives to closure were considered, and/or how much discretion was involved in the closure determinations. Without such evidence, no court can conclude that Ohio State exercised a high degree of official judgment or discretion in closing the Ohio Union and dental clinic.

{¶ 34} I recognize that this court reached a different conclusion in *Smith v. Ohio State University*, 2024-Ohio-5887 (10th Dist.). There, on remand, this court considered whether Ohio State was protected by discretionary immunity for its decisions to transition

from in-person instruction to virtual learning and restrict access to the campus. After considering the evidence in that case, this court had "no trouble concluding that those decisions constituted basic policy decisions, characterized by the exercise of a high degree of official judgment or discretion." *Id.* at ¶ 32. The record in *Smith*, however, included more evidence regarding the decisions at issue than the record in this case. That evidence included the deposition of Dr. Bruce McPheron, who was Ohio State's Executive Vice President and Provost, as well as a member of Ohio State's COVID-19 task force. Dr. McPheron testified about making the " 'hard decision' " to temporarily transition to virtual instruction, which entailed deciding " 'how best to actually ensure the health of [Ohio State's] faculty, staff and students while still being able to deliver [Ohio State's] mission.' " *Id.* at ¶ 31, quoting McPheron Dep. at 44. The absence of such evidence in this record should preclude this court from reaching the same result as in *Smith*.

{¶ 35} The majority decision fills the gaps in the record by taking judicial notice of "the grave danger associated with [the] easily transmissible disease" of COVID-19 and citing to materials extrinsic to the record. (Majority Decision at ¶ 28.) The majority decision then concludes that certain, unidentified Ohio State officials must have exercised their discretion to close the Ohio Union and the dental clinic to advance the policy of protecting the health and safety of students, faculty, and staff. Although the majority decision states its conclusions are beyond "reasonable dispute," they are unsupported by any record evidence, and thus fall into the realm of speculation. *Id.* Speculation cannot substitute for evidence. *Sharp v. Andersons, Inc.*, 2006-Ohio-4075, ¶ 22 (10th Dist.). Instead of relying on speculation based on judicial notice of the danger of COVID-19, I would require evidence of the facts necessary to show that discretionary immunity applies in this case.

{¶ 36}   For these reasons, I respectfully dissent.

_____