**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| JAVELEN L. WOLFE<br><br>Plaintiff<br><br>v.<br><br>OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION<br><br>Defendant | Case No. 2024-00499JD<br><br>Judge Lisa L. Sadler<br>Magistrate Amber G. Damiani<br><br><u>DECISION</u> |

{¶1} Before the Court and ripe for decision is Defendant's January 13, 2025 motion for summary judgment or, in the alternative, motion to transfer this case to the administrative docket. For the reasons set forth below, the Court GRANTS Defendant's motion for summary judgment.

**Standard of Review**

{¶2} Before awarding summary judgment, courts should take caution and "resolve any doubt in favor of the non-moving party." *Darden v. City of Columbus*, 2004-Ohio-2570, ¶ 8 (10th Dist.), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992). Courts review motions for summary judgment under the standard set forth in Civ.R. 56(C), which states, in part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the

nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). To meet this initial burden, the moving party must be able to point to evidentiary materials of the type listed in Civ.R. 56(C). *Id*. at 292-293.

{¶3} If the moving party meets its initial burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings," but has a reciprocal burden to file a response which "must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). It is well-established that courts should not render summary judgment unless:

> construing the evidence most strongly in favor of the nonmoving party:
> (1) there is no genuine issue of material fact; (2) the moving party is entitled
> to judgment as a matter of law; and (3) reasonable minds can come to but
> one conclusion, that conclusion being adverse to the nonmoving party.

*Robinette v. Orthopedics, Inc.*, 1999 Ohio App. LEXIS 2038, *7 (10th Dist. May 4, 1999).

**Background**

{¶4} It is undisputed that, prior to 2023, Defendant had a business relationship with JPay, Inc., a technology vendor, through which inmates under the custody and control of the Ohio Department of Rehabilitation and Correction (ODRC) could "purchase their own JPay tablets for personal use, electronic communication, game[s] and music." Nixon Aff., ¶ 4. The retail price for a JPay tablet was $129.99, but inmates could purchase the JP6 version of the tablet "at a discounted rate of $69.99 or $99.99, if they were trading in an older tablet or buying a tablet for the first time . . . ." *Id*. at ¶ 5. Defendant's institutions also had JPay kiosks available for similar use if an inmate could not afford to purchase his own tablet. *Id*. at ¶ 4.

{¶5} Notwithstanding, inmates who purchased their own tablets had to use the institution's JPay kiosks to receive software updates by connecting the tablet to the kiosk. Nixon Aff., ¶ 6. However, Defendant discovered that some inmates were not attaching their tablets to the JPay kiosk to receive the necessary updates, "which allowed them to 'jail break' their tablets" and "[t]his created a security concern." *Id*. at ¶ 6-7. Specifically, "[a] JPay tablet that was not updated created security vulnerabilities that may allow the

tablet to be used as a standard Android tablet which allowed the user unfettered access to the internet." *Id.* at ¶ 7.

{¶6} To replace the JPay tablets, Defendant's former Vendor Project Manager and Contract Monitor[1] averred that the Ohio Department of Administrative Services (DAS) created a solicitation in 2021 on behalf of ODRC to secure an electronic tablet vendor. *Id.* at ¶ 3. Thereafter, ViaPath (formerly known as Global Tel Link) secured the contract to become the electronic tablet vendor for all ODRC institutions. *Id.* at ¶ 4. Under this agreement, Defendant provided all inmates with a new tablet from ViaPath where "all software updates are pushed out to every tablet through the ViaPath network" utilized at every ODRC institution. *Id.* at ¶ 3, 8. Thus, transitioning to the ViaPath tablets made use of "the JPay kiosks unnecessary." *Id.* at ¶ 8.

{¶7} In July 2023, Defendant issued a memorandum outlining a procedure to phase out the JPay tablets, titled: "ATTENTION: JPay Tablet Phase-Out". Venable Aff., ¶ 3; Nixon Aff., ¶ 14. In order to facilitate this exchange, Defendant gave inmates who purchased a JPay tablet "the opportunity to receive a credit for their tablet if they turned it in to [ODRC] staff, have their tablet mailed to family or friends for free or have the tablet stored until their release if they had no one to send it to." Nixon Aff., ¶ 13. Additionally, inmates could opt to have certain data transferred from their JPay tablets to the new ViaPath tablets during the phase-out program. *Id.* at ¶ 9-12.

{¶8} According to Defendant's July 2023 memorandum, the JPay tablets would be considered contraband beginning on October 1, 2023. *Id.* at ¶ 14, Exh. A; Venable Aff., ¶ 3. On March 14, 2024, Plaintiff's JPay tablet was taken from him after he "had all opportunities to take advantage of the phase out program to preserve his stored data." Venable Aff., ¶ 4. While Plaintiff initially refused to sign the Individual Contraband Slip memorializing the fact that Defendant confiscated his JPay tablet on March 14, 2025, Plaintiff subsequently signed and noted "signed under duress (conduct report)" on March 15, 2025. *Id.* at ¶ 5, Exh. B.

---

[1] While Katie Nixon is currently employed as a Deputy Warden with ODRC, she held this former role from October 2021 through August 2024. Nixon Aff., ¶ 2. Her duties as the Vendor Project Manager and Contract Monitor involved reviewing and analyzing "contracts between outside vendors and ODRC, which included the agreement with ViaPath." *Id.*

{¶9} On June 11, 2024, Plaintiff filed this action as a result of Defendant confiscating his JP6 player.  Therein, Plaintiff delineates the following claims: conversion of property, unjust enrichment, third party beneficiary of contract, false representation, and bailment. According to the complaint, Plaintiff should have been allowed to keep his JP6 player according to Defendant's policy, but he was forced to sign an unauthorized contraband form or be issued a conduct report.  Plaintiff further alleges that Defendant failed to exercise ordinary care in handling and storing his personal property, and Defendant will not return his JP6 player despite his repeated requests.

{¶10} Additionally, Plaintiff contends that Defendant participated in "an opportunistic- breach-of-contract" when it made Plaintiff "forfeit, [sic] his rights as an owner" of the JP6 player "to become a 'user' of [the ViaPath] tablet."  Plaintiff asserts that he is an "intended beneficiary of the contract" between Defendant and ViaPath because the contract "gave the inmate no way to not participate in the deal and forcing the plaintiff to forfeit his property" and Defendant "benefitted from the greater deal, as the plaintiff suffers."  Plaintiff also alleges that Defendant "deceived the whole entire population of inmates/plaintiff alike" because it was aware that the ViaPath tablets' "storage was not capable of storing the amount of data that the JPlayers were able to hold."  Based on these allegations, Plaintiff seeks $80,000.00 in damages.

**Law and Analysis**

{¶11} Defendant argues that it is entitled to judgment as a matter of law because the complaint fails to state a cognizable claim for relief.  Specifically, Defendant argues that it is entitled to discretionary immunity because Plaintiff's JP6 player was confiscated as a result of an agency-wide program implemented to improve the safety and security of its institutions.  Upon review, the Court finds that Defendant is entitled to summary judgment.

{¶12} Historically, the doctrine of sovereign or discretionary immunity has been ambiguous and elusive in its application.  Most recently, the Supreme Court held that "the Court of Claims does not have jurisdiction when the state makes highly discretionary decisions pursuant to its legislative, judicial, executive, or planning functions, because the state has not waived its sovereign immunity for those decisions." *Smith v. Ohio State*

*Univ.*, 2024-Ohio-764, ¶ 16. Therefore, "discretionary immunity is a jurisdictional bar" and "the Court of Claims does not have subject-matter jurisdiction when discretionary immunity applies." *Id.* However, "discretionary immunity is not absolute. Once a discretionary decision has been made to engage in a certain activity, 'the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities.'" *Id.* at ¶ 17, quoting *Reynolds v. State*, 14 Ohio St.3d 68 (1984), paragraph one of the syllabus. Thus, "when a suit challenges the manner in which the state implements one of its discretionary decisions, the Court of Claims will not be barred from hearing the case." *Id.* at ¶ 17.

{¶13} With respect to prison administration, specifically, it is well settled that "[p]enal institutions are 'accorded deference in adopting and executing policies and procedures to maintain order.'" *Allen v. Ohio Dept. of Admin. Servs. Office of Risk Mgmt.*, 2020-Ohio-1138, ¶ 18 (10th Dist.), quoting *Hughes v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-4739, ¶ 17 (10th Dist.). Importantly, decisions that concern prison security and administration are executive functions that involve a high degree of official discretion. *See Skorvanek v. Ohio Dept. of Rehab. & Corr.*, 2018-Ohio-3870, ¶ 84 (10th Dist.).; *see also Burse v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-2882, ¶ 17 (10th Dist.). Even in circumstances involving prison security, however, the Court notes that ODRC may fail to demonstrate that it is protected by discretionary immunity when it is indolent in properly developing the record. *See, e.g.*, *Foster v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-912, ¶ 23-26 (10th Dist.) ("Indeed, many state employees are called upon to exercise a high degree of discretion while working" and the "application of the discretionary immunity doctrine requires more than a finding that a state employee . . . made a decision that required the exercise of a high degree of discretion . . . .").

{¶14} To determine whether Defendant is entitled to discretionary immunity, the Court looks to which decisions or actions Plaintiff challenges. *See McDermott v. Ohio State Univ.*, 2025-Ohio-396, ¶ 23 (10th Dist.); *see also Smith v. Ohio State Univ.*, 2024-Ohio-5887, ¶ 25 (10th Dist.). While Plaintiff couches his claims in certain legal terms—i.e., conversion of property, unjust enrichment, third party beneficiary of contract, false representation, and bailment—over which this Court arguably has jurisdiction, it is clear from his underlying allegations that Plaintiff challenges Defendant's policy decision to

phase out the inmates' use of the JPay tablets and, as a result of that change in procedure, Defendant confiscating Plaintiff's JP6 tablet on March 14, 2024. *See generally Guillory v. Ohio Dept. of Rehab. & Corr.*, 2008-Ohio-2299, ¶ 11 (10th Dist.) ("The mere fact that claims in a complaint are couched in certain legal terms is insufficient to confer jurisdiction upon a court."). Plaintiff neither claims that Defendant was negligent in its execution of the phase-out program it implemented, nor does he set forth any allegation that Defendant prevented him from participating in the phase-out program before October 1, 2023. Instead, Plaintiff takes specific issue with Defendant entering a contract that ultimately required inmates to forfeit their personal property and, more specifically, contracting with ViaPath for a tablet whose storage capacity is allegedly inferior to that of the JPay tablet.

{¶15} To this end, the relevant jurisdictional facts are sufficiently developed in this case for the Court to reasonably conclude that Defendant's decision to replace the JPay tablets with the ViaPath tablets was based on prison safety and administration considerations. *See, e.g., Allen* at ¶ 18-22 (As a matter of law, "DRC's removal of seatbelts from the inmate seating area of the transport van constitutes a prison security policy that affords DRC a high degree of discretion" because the use of a seatbelt "potentially exposes the officers to unnecessary risk when reaching over the inmate to fasten and unfasten the seatbelt when an inmate could attempt to grab their forearm."). Initially, the Court notes that Defendant failed to provide any evidence detailing the decision-making process—i.e., who determined that phasing out the JPay tablets was the best option to remedy the identified safety concerns, whether deliberation occurred prior to the determination that technology vendors needed to change, whether alternatives to switching technology vendors were considered, how much discretion was involved in the decision to change technology vendors, etc. Notwithstanding, the Court finds the record in this case presents no reasonable dispute that phasing out the JPay tablets involved agency-wide safety concerns about institutional security and that Defendant engaged in the level of complex evaluation necessary to demonstrate that it exercised an executive or planning function involving a high degree of official judgment or discretion when adopting and implementing such policy changes. *See Al-Jahmi v. Ohio Ath. Comm.*, 2022-Ohio-2296, ¶ 80-85 (10th Dist.).

{¶16} Particularly, the uncontested evidence Defendant submitted demonstrates that ODRC (1) considered the security risks posed by the JPay tablets; (2) identified the loopholes that could be used to circumvent the necessary security updates; (3) collaborated with DAS to solicit and secure an electronic tablet vendor; (4) contracted with a vendor who supplied a tablet that remedied the identified safety concerns; (5) made agency-wide updates to procedures regarding system updates to reduce the security risks associated with aging software; (6) considered the inmates' stored information and developed methods to preserve or transfer any legitimate data to new tablets; (7) created a multifaceted procedure to phase out the JPay tablets at all ODRC institutions; (8) gave notice of the policy and procedure changes regarding tablets to all inmates under the custody and control of Defendant; and (9) enforced the phase-out procedures.

{¶17} In response, Plaintiff fails to rebut that the JPay tablets were being misused or that the ViaPath tablets allowed for more robust security measures.  While Plaintiff argues in his opposition that Defendant violated its own policy when it confiscated his JP6 player, Plaintiff submits no Civ.R. 56 evidence setting "forth specific facts showing that there is a genuine issue for trial."  Civ.R. 56(E) ("When a motion for summary judgment is made and supported . . . , an adverse party may not rest upon the mere allegations or denials of the party's pleadings.").  Importantly, Plaintiff neither specifies what policy Defendant allegedly violated, nor does he refute that he failed to engage in the phase-out procedures before October 1, 2023, which would have allowed him to preserve his data or otherwise earn credits in exchange for the loss of the legitimate data stored on his JP6 player.

{¶18} While the Court does not condone any failure to provide evidence that would otherwise be crucial in establishing that ODRC's change in procedure required "the exercise of a high degree of discretion as to an executive or planning function involving the making of a basic policy decision," this Court also considers that ODRC is given deference in implementing agency-wide procedures to maintain order within its institutions as well as Plaintiff's failure to provide any controverting evidence to otherwise establish a genuine issue of material fact.  Based on the evidence provided, the Court finds that Defendant's decision to disallow the use of vulnerable technology and its development of a multifactorial plan to implement this policy change in all of its institutions

can only reasonably be construed as being "a basic policy decision that involved a high degree of official judgment or discretion."  *See McDermott* at ¶ 28.

{¶19} Put simply, Defendant's policy decisions regarding what tablet devices to which inmates have access within ODRC institutions to best prevent security vulnerabilities and what vendors with which it contracts to secure that technology concern prison safety and administration and, as such, are executive functions that involve a high degree of official discretion.  Therefore, any claims stemming therefrom are barred by the doctrine of discretionary immunity.  *See, e.g., Smith*, 2024-Ohio-5887, ¶ 28-31 (10th Dist.).  Consequently, the Court lacks subject-matter jurisdiction over Plaintiff's claims.

## Conclusion

{¶20} For the reasons stated above, the Court GRANTS Defendant's motion for summary judgment.  Judgment is rendered in favor of Defendant and Plaintiff's complaint is DISMISSED for lack of subject-matter jurisdiction.


LISA L. SADLER
Judge

[Cite as *Wolfe v. Ohio Dept. of Rehab. & Corr.*, 2025-Ohio-1250.]

| | |
|---|---|
| JAVELEN L. WOLFE | Case No. 2024-00499JD |
| Plaintiff | Judge Lisa L. Sadler<br>Magistrate Amber G. Damiani |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

**IN THE COURT OF CLAIMS OF OHIO**

{¶21} A non-oral hearing was conducted in this case upon Defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, the Court GRANTS Defendant's motion for summary judgment. Judgment is rendered in favor of Defendant and Plaintiff's complaint is DISMISSED for lack of subject-matter jurisdiction. All previously scheduled events are VACATED. Court costs are assessed against Plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

LISA L. SADLER
Judge

**Filed March 7, 2025**
**Sent to S.C. Reporter 4/10/25**